**Wendy J. NORVILLE, Plaintiff–Appellant,**

v.

**STATEN ISLAND UNIVERSITY HOSPITAL, Defendant–Appellee.**

**No. 98–9583.**

United States Court of Appeals, Second Circuit.

Argued: Aug. 13, 1999.

Decided: Nov. 3, 1999.

Glenn Greenwald, Greenwald, Christoph & Holland, P.C., New York, NY (Mona Holland, on the brief), for plaintiff-appellant.

Michael J. Volpe, Clifton, Budd & De-Maria, LLP, New York, NY (Kevin J. McGill, Daniel C. Moreland, on the brief), for defendant-appellee.

Before: CALABRESI, CABRANES and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge:

Plaintiff-appellant Wendy Norville brought this action under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (1994 & Supp.1999) ("the ADA"), the New York State Human Rights Law, N.Y. Exec. Law § 295 (McKinney 1993 & Supp. 1999), and the New York City Administrative Code, N.Y.C. Admin. Code § 8–107 (1998), claiming that the defendant-appellee, Staten Island University Hospital ("SIUH"), discharged her because of her race, her age and her disability. During trial, the United States District Court for the Eastern District of New York (Tucker L. Melançon, of the United States District Court for the Western District of Louisiana, sitting by designation) granted judgment as a matter of law in favor of the defendant on Norville's race and age claims. The jury returned a verdict in SIUH's favor on Norville's disability claim, and the court entered an order dismissing all claims on November 9, 1998. For the reasons that follow, we affirm the district court's grant of judgment as a matter of law on the race and age discrimination claims, but find that the court did not properly instruct the jury with regard to Norville's disability claim. We therefore vacate the jury's verdict on the ADA claim and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

Wendy Norville, a 56–year–old black woman, began working as a nurse at SIUH in 1981. On November 3, 1993, she suffered a spinal injury while working in the hospital's North Site neurology unit. As a result of the injury, Norville began an extended leave of absence in January 1994.

In November 1994, Norville sought to return to work. She submitted two doctors' notes stating that she was capable of resuming her employment, with the qualification that she should avoid heavy lifting, stretching and bending. Because her previous job as a neurology nurse was no longer available, Norville began working with personnel administrators to find a different job within the hospital that she could perform with her disability. SIUH subsequently extended Norville's leave of absence beyond its original one-year limit

while it attempted to identify such a position.

In December 1994 and January 1995, Ann Conelli, the hospital's Recruitment Manager, informed Norville that nursing positions were available at the hospital's South Site. Norville chose not to apply for these positions, however, because moving to the South Site would have caused her to lose all of the seniority she had accumulated at the North Site between 1981 and 1994. The nurses at SIUH's two sites are represented by two separate unions, each with its own collective bargaining agreement and seniority system. The respective collective bargaining agreements make personnel rights and benefits a function of seniority, and further provide that seniority depends on the length of a nurse's membership in the particular union. As a result, had she accepted a position that required her to move from the North Site to the South Site and thus change unions, Norville would have sacrificed all of the seniority rights she held in the North Site union. This in turn would have led to a freeze in her pension benefits, increased vulnerability to layoffs, and fewer rights with respect to new openings and assignments.

Conelli also proposed part-time positions, but Norville, who had worked full-time prior to her disability, refused to pursue these options as well. Instead, in late March or early April 1995, Norville learned about a vacant nursing position in the North Site radiology department and requested permission to interview for that job. Margaret DiAlto, SIUH's Employee Relations Manager, informed Norville that if she could produce a doctor's note stating that she could perform the essential functions of the radiology nurse job, the hospital would be willing to offer her the position. In response, Norville submitted a note from her neurologist dated April 28, 1995, stating that Norville was under his care for lumbar radiculopathy and that she would be able to return to work in May 1995. She interviewed with John Mona-

han, the hospital's Director of Radiology, but was rejected in favor of Robert Laureano, a 38–year–old Hispanic nurse at SIUH. Monahan testified at trial that he chose Laureano because Laureano's intravenous insertion skills were superior to Norville's.

SIUH terminated Norville's employment on May 16, 1995, citing her extended leave and the hospital's inability "to place [her] in a position in which [she was] able to perform the essential functions *or* one that [she was] willing to assume." Joint App. at 326 (emphasis in original). Norville then filed a timely complaint with the Equal Employment Opportunity Commission, claiming that the hospital had violated the ADA by terminating her employment based on her disability and by failing to make reasonable accommodations. After receiving a right-to-sue letter, Norville filed the instant action, charging disability discrimination under the ADA as well as disability, race and age discrimination in violation of state and city civil rights laws.

On July 29, 1998, United States District Judge Raymond J. Dearie of the Eastern District of New York denied the defendant's motion for summary judgment on all claims. The case was then transferred for trial to Judge Tucker L. Melançon, of the Western District of Louisiana, sitting by designation. At the close of the evidence, the court granted SIUH's motion pursuant to Fed.R.Civ.P. 50(a) for judgment as a matter of law on Norville's race and age discrimination claims, but denied the Rule 50 motion with respect to the disability claim. The jury subsequently returned a verdict for SIUH on Norville's disability claim, and the court entered judgment for the hospital on all claims on November 9, 1998. This appeal followed.

## DISCUSSION

I. *Judgment as a Matter of Law*

We review *de novo* a district court's grant of judgment as a matter of law under Fed.R.Civ.P. 50(a). *See This Is*

*Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir.1998). In assessing whether judgment as a matter of law is proper, the court must view all evidence and draw all inferences in the light most favorable to the non-moving party. *See EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 119 (2d Cir.1994). We will affirm a grant of judgment as a matter of law only if no reasonable factfinder could return a verdict against the movant. *See id.* In the instant case, therefore, we must examine whether the evidence at trial provided any basis on which a juror reasonably could have found that Norville was a victim of race or age discrimination.[1]

■ The procedure for demonstrating both age and race discrimination under the state and city antidiscrimination laws follows the familiar *McDonnell Douglas* order of proof for claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994 & Supp.1999). *See Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n. 1 (2d Cir.1999) (state law); *Landwehr v. Grey Advertising, Inc.*, 211 A.D.2d 583, 622 N.Y.S.2d 17, 18 (1st Dep't 1995) (city law). First, the plaintiff must establish a prima facie case of discrimination by showing that 1) she is a member of a protected class; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination. *See de la Cruz v. New York City Human Resources Admin.*, 82 F.3d 16, 20 (2d Cir.1996) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *See id.* If the employer meets its burden, the plaintiff then must prove that the articulated justification is in fact a pretext for discrimination. *See id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

### A. Norville's Race Discrimination Claim

■ Norville's race discrimination claim rests on her allegation that the hospital refused to accommodate her disability despite having made job accommodations for two disabled white nurses. There is no dispute that as a black woman who was terminated from her job, Norville satisfied the first and third elements of her prima facie case, *i.e.*, she is a member of a protected class who suffered an adverse employment action. We need not decide whether she was qualified for the radiology position, however, because Norville's claim ultimately fails on the fourth prong: she did not produce evidence sufficient to support a reasonable inference that her termination was the result of race discrimination.

■ A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably. *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir.1997). In order to make such a showing, the plaintiff must compare herself to employees who are "similarly situated in all material respects." *Id.* at 64. Norville attempts to satisfy this standard by claiming that the hospital treated her less favorably than two similarly situated white nurses.

1. We reject Norville's claim that Judge Dearie's denial of summary judgment prior to trial precluded Judge Melançon from granting judgment as a matter of law at the close of the evidence. Although a denial of summary judgment pursuant to Fed.R.Civ.P. 56 indicates that genuine material issues remain for the factfinder to resolve, *see* Fed.R.Civ.P. 56(c) ("[Summary judgment] shall be rendered ... if [the papers before the court] show that there is no genuine issue as to any material fact"), a court is free to conclude that the record amassed at trial has eliminated all such issues and thus made judgment as a matter of law appropriate. *See Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 80 (2d Cir.1997); *Sagendorf–Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir.1996).

Specifically, she alleges that when these two nurses, Carol Parker and Charlotte Deddo, became disabled, the hospital accommodated their disabilities, but refused to extend Norville the same consideration.

Norville has not shown, however, that she was similarly situated to either of these nurses in any material respect. First, Norville testified at trial that Ms. Parker had terminal cancer, for which she was receiving radiation with side effects of pain and discomfort. As a result, on many days Parker could not work and had to go home early. Nonetheless, Parker continued her employment at SIUH, sometimes leaving her shift to receive therapy, and the hospital allowed her to continue working under these circumstances for as long as she was able. Margaret DiAlto, SIUH's director of human resources, also testified that Parker was very sick and was in and out of work until taking permanent disability leave. With respect to Charlotte Deddo, Norville testified that Deddo, like Norville herself, had a herniated disc and that she was promoted to Assistant Head Nurse around the time of her injury. Norville also stated that she and Deddo worked on *different floors*, although Norville occasionally filled in on Deddo's floor.

■ This evidence does not suffice to meet Norville's prima facie burden. In order for employees to be "similarly situated" for the purposes of establishing a plaintiff's prima facie case, they "must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's...." *Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531, 1547 (S.D.N.Y.1986), *aff'd*, 814 F.2d 653 (2d Cir.1987). Norville has not shown that either Parker or Deddo falls within this category. The trial record

contains no evidence regarding the specific degree to which either of these nurses was disabled, the type of work they did prior to becoming disabled, or the ways in which they were limited in performing their jobs. Norville thus has failed to demonstrate that they were "subject to the same standards governing performance evaluation" or that they "engaged in conduct similar to [hers]." *Id.* Furthermore, the only evidence Norville produced regarding SIUH's accommodation of the two nurses' disabilities lies in her testimony that Parker would sometimes leave her shift to receive treatment. Norville has not alleged that leaving the shift created a problem, much less that Parker needed assistance in performing the "essential functions" of her original nursing job, as Norville admittedly did. Similarly, she has not produced any evidence showing that Deddo's promotion to Assistant Head Nurse was in any way related to her disability.[2]

Because Norville produced insufficient evidence at trial to show that the hospital treated similarly situated white employees more favorably, she failed to establish a prima facie case of race discrimination. The district court therefore did not err in granting the defendant's motion for judgment as a matter of law on Norville's race claim.

### B. *Norville's Age Discrimination Claim*

■ Norville's age discrimination claim centers on the hospital's decision to hire a younger employee to fill the position of radiology nurse in May 1995. To establish a prima facie case of age discrimination, a plaintiff must show: 1) membership in a protected age group; 2) qualification for the position; 3) an adverse employment decision; and 4) circumstances giving

---

2. In her brief on appeal, Norville references a number of proposed trial exhibits, which, she argues, lend support to her claim that the hospital accommodated Parker and Deddo in a manner more favorable than its treatment of her. *See* Pl.'s Br. at 27–28. The district

court excluded these proposed exhibits at trial, however, and Norville has not appealed those evidentiary rulings. Accordingly, because that evidence was not before the district court in ruling on SIUH's Rule 50(a) motion, we do not consider it on appeal.

rise to an inference of discrimination. *See Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir.1998). There is no dispute that Norville, who was 53 at the time she was rejected for the radiology nurse position, is a member of a protected class or that SIUH's refusal to place her in the vacant position constitutes an adverse employment action. SIUH claims, however, that Norville was not qualified for the radiology position and that she produced no facts giving rise to an inference of discrimination.

As a threshold matter, we find that Norville successfully created a jury question as to her qualifications for the radiology nurse job. In particular, she presented considerable evidence refuting Monahan's testimony that Norville was not fit to be a radiology nurse because she had poor IV insertion skills and lacked IV certification. DiAlto testified, for instance, that IV certification could be obtained in a few days and that Norville's lack of certification therefore was not an impediment to becoming a radiology nurse. Norville also called on her expert witness, Dr. David Forrester, who testified that Norville's physical limitations would not interfere with her ability to perform the essential functions of the radiology job. In addition, Forrester stated that the South Site operating room nurse position, which the hospital had encouraged Norville to consider in January 1995, was more physically demanding than the radiology job she ultimately sought.

■■■■■ In light of the evidence both affirming and denying that Norville was qualified for the radiology position, we find that she has raised a genuine factual issue with respect to this element of her prima facie case. Moreover, Norville produced sufficient circumstantial evidence to give rise to an inference of discrimination. In carrying this burden, it is enough for a plaintiff to present evidence that an employer departed from its usual employment practices and procedures in dealing with that particular employee. *See, e.g.,*

*Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 313 (2d Cir.1997). In this case, Elise Conway, SIUH's North Site nursing union representative, testified that when two equally qualified employees apply for a new position, it ordinarily goes to the applicant with more seniority. Though Norville had more seniority than Laureano, the hospital awarded him the position. In addition, Monahan testified that although he does not typically make hiring decisions without checking the applicants' performance histories, he did so in this case.

■■■■ Because there is some evidence in the record suggesting that SIUH's course of action in filling the radiology position deviated from its standard practice, Norville successfully established this final element of her prima facie claim. The burden then shifted to SIUH to articulate a legitimate, nondiscriminatory justification for choosing Laureano. The hospital offered several such reasons at trial: Norville's physical inability to perform the job, her lack of IV certification, and her failure to submit a letter from her doctor explicitly stating that she was physically capable of performing all of the functions of the radiology nurse job. The burden thus shifted back to Norville to prove that the hospital's reasons were in fact a pretext for age discrimination. This she failed to do.

■■■■ Norville argues that the jury would have been entitled to infer pretext from the hospital's multiple justifications for choosing Laureano over her. Relying on *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116 (2d Cir.1994), in which we held that inconsistent explanations for terminating the plaintiff created a jury question on the issue of pretext, Norville claims that the hospital's various explanations cast doubt on the veracity of all of the proffered reasons. *Cf. id.* at 120 (finding evidence of pretext where employer first stated that it had ignored company guidelines in terminating the plaintiff, and then later stated that it had acted in accordance with those

guidelines). We agree that the hospital's varying justifications are enough, albeit barely, to suggest pretext. The hospital offered two specific reasons for rejecting Norville: DiAlto testified that she could not place Norville in the radiology nurse position because Norville failed to bring in a letter from her doctor stating that she was physically able to perform the job. Had Norville brought in such a note, DiAlto testified, the hospital would have offered her the position. Monahan testified, however, that even if Norville had produced the note—indeed, even if she had been "perfect physically"—she would not have been hired for the radiology job because of her inability to start IVs. While these two justifications contradict one another less directly than those proffered in *Ethan Allen,* the job of reconciling them (or not) belongs to the factfinder and is not appropriate for resolution as a matter of law.

■■■ Nonetheless, the district court ultimately did not err in granting judgment as a matter of law on Norville's age discrimination claim because Norville produced no evidence that the hospital's reasons, even if pretextual, served as pretext for age discrimination. *See Fisher v. Vassar College,* 114 F.3d 1332, 1339 (2d Cir. 1997) (en banc) ("[An employment discrimination] plaintiff may prevail only if an employer's proffered reasons are shown to be a pretext *for discrimination,* either because the pretext finding itself points to discrimination or because other evidence in the record points in that direction—or both." (emphasis in original)). Norville's claim of age-related animus rests solely on the fact that Monahan asked, during their respective interviews, what year she and Laureano had graduated from nursing school.[3] Even assuming that Monahan could have inferred each applicant's age

based on their respective answers, there is simply no evidence that this was the purpose of his question, and nothing else in the record indicates that Monahan selected Laureano because he was the younger applicant. *Cf. Brennan v. Metropolitan Opera Ass'n,* 192 F.3d 310, 317 (2d Cir.1999) (upholding summary judgment on age discrimination claim where plaintiff never told employer her age and employer testified that he thought plaintiff and her replacement "were [both] in their thirties"). Therefore, we find that the evidence presented at trial was insufficient to raise a jury question as to whether SIUH discriminated against Norville on the basis of her age. The district court thus did not err in granting judgment as a matter of law to the defendant on Norville's age discrimination claim.

## II. *The Jury Charge*

Norville argues that the verdict for the hospital on her ADA claim rests on an erroneous jury charge. Specifically, she claims that the court erred in failing to instruct the jury that an employer's offer of an inferior position does not constitute "reasonable accommodation" under the ADA when jobs comparable to the employee's former position are vacant. We now turn to this contention.

### A. *Applicable Standards Under the Americans With Disabilities Act*

■■ The ADA prohibits employers from discriminating against an "otherwise qualified" individual on the basis of his or her disability. 42 U.S.C. § 12112. An individual is "otherwise qualified" under the statute if she can, "with or without reasonable accommodation, ... perform the essential functions of the employment position that such individual holds or de-

---

**3.** Norville also seeks to support her claim of age discrimination by demonstrating that Laureano had a poor work performance history, while her own performance record was excellent. While such evidence ordinarily can support a finding of discriminatory animus, *see, e.g., Goyette. v. DCA Adver. Inc.,* 828

F.Supp. 227, 234 (S.D.N.Y.1993), Laureano's performance record was never admitted into evidence at trial. Therefore, as with the excluded exhibits relating to Norville's race discrimination claim, this material cannot support Norville's appeal from the district court's grant of judgment as a matter of law.

sires." *Id.* § 12111(8). A disabled employee may make out a prima facie case under the ADA if she shows either that she can perform the essential functions of the job without accommodation or that she can do so with reasonable accommodation and that the employer refused to make such an accommodation. The employer may defeat the prima facie case, however, by demonstrating that making the proposed accommodation would result in undue hardship. *See Mitchell v. Washingtonville Cent. School Dist.,* 190 F.3d 1, 6 (2d Cir.1999).

■ The statute lists several forms of reasonable accommodation, including "reassignment to a vacant position." 42 U.S.C. § 12111(9). According to the EEOC guidelines, an employer who utilizes reassignment to meet the duty of reasonable accommodation for a current employee "should reassign the individual to an equivalent position in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time." *EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act,* 29 C.F.R. App. § 1630.2(*o*); *see also, e.g., Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1177 (10th Cir.1999) (en banc) ("The employer should first consider lateral moves to positions that are regarded as equivalent. An employer may only consider lesser jobs that constitute a demotion if there are no such equivalent positions available."); *Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 634 (6th Cir.1998) ("An employer may reassign an employee to a lower grade and paid position if the employee cannot be accommodated in the current position and a com-

parable position is not available."). Reassignment does not constitute reasonable accommodation, therefore, where a position comparable to the employee's former placement is available, but the employee instead is assigned to a position that would involve a significant diminution in salary, benefits, seniority or other advantages that she possessed in her former job.

■ Accordingly, to prevail on an ADA claim where the employer has offered reassignment as a reasonable accommodation, the employee . must offer evidence showing both that the position offered was inferior to her former job and that a comparable position, for which the employee was qualified, was open. This dual burden limits an employer's obligations with respect to reassignment as a method of reasonable accommodation. For example, an employer need not reassign an employee if no position is vacant. *See Mitchell,* 190 F.3d at 9. Nor is the employer obliged to create a new position to accommodate the employee. *See, e.g., Willis v. Pacific Maritime Ass'n,* 162 F.3d 561, 567 (9th Cir.1998). Moreover, the disabled individual must show that she is qualified for the vacant position, *see* 29 C.F.R. App. § 1630.2(*o*), and the employer retains the option of establishing that reassignment would create an undue hardship, *see* 42 U.S.C. § 12112(b)(5)(A). Nonetheless, where a comparable position is vacant and the disabled employee is qualified for the position, an employer's refusal to reassign the employee to that position—absent some other offer of reasonable accommodation—constitutes a violation of the ADA.[4]

---

4. In a recent en banc decision, the Tenth Circuit held that the ADA does not allow an employer to reject a disabled applicant for reassignment solely on the ground that another candidate is better qualified. *See Smith,* 180 F.3d at 1167; *see also EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act* 44 (1999) ("Reassignment means that the employee gets the vacant position if s/he is qualified for it."), cited in

*Smith,* 180 F.3d at 1166–67. We need not reach this issue here, however, because SIUH did not argue at trial that it chose Laureano for the radiology job because he was the better qualified applicant, and it has not advanced that claim on appeal. Rather, its defense rested entirely on the contention that Norville was not qualified for the position at all. We therefore need not decide whether SIUH would have been permitted, under the ADA, to reject Norville for the radiology nurse

### B. *The Jury Instructions on Reasonable Accommodation*

An erroneous jury instruction, unless harmless, compels reversal. *See Pahuta v. Massey–Ferguson, Inc.,* 170 F.3d 125, 135 (2d Cir.1999). "A jury charge is erroneous if it misleads the jury as to the correct legal standard, or if it does not adequately inform the jury of the law." *Id.*(quoting *Hathaway v. Coughlin,* 99 F.3d 550, 552 (2d Cir.1996)) (internal quotation marks omitted); *see also United States v. Locascio,* 6 F.3d 924, 939 (2d Cir.1993) (holding that court of appeals will reverse based on erroneous instruction if the charge "as a whole" resulted in prejudice). Failure to give a requested instruction, if it results in such a misleading charge, constitutes reversible error. *See Castro v. QVC Network, Inc.,* 139 F.3d 114, 116 (2d Cir.1998).

On the issue of reasonable accommodation, the trial court instructed the jury as follows:

> [T]he defendant has an obligation to reasonably accommodate plaintiff. A reasonable accommodation is one which does not impose an undue hardship upon the defendant; in this case, the defendant's nursing department. The law does not require the employer to provide every accommodation the disabled employee may request, as long as the accommodation provided is reasonable. The plaintiff does not have the right to choose her reasonable accommodation.

Norville argues that this instruction was deficient because the trial judge failed to alert the jury that an offer of an inferior position, when a comparable position is vacant, does not satisfy the employer's duty to provide a reasonable accommodation. Norville's counsel raised a similar objection at trial, and requested that the charge include language to the effect that "it is not a reasonable accommodation to attempt to assign a disabled employee to a worse position where they would suffer in some way, either by being segregated or receiving less benefits." The court, however, found that the record before the jury did not justify such an instruction. We disagree.

As set forth above, the law is clear that an offer of an inferior position does not constitute a reasonable accommodation where a position with salary and benefits comparable to those of the employee's former job is available. Norville presented sufficient evidence to warrant some version of her requested instruction on this point. Although SIUH argued at trial that it reasonably accommodated Norville by proposing placement in various positions elsewhere in the hospital, all of these positions were either part-time or at the hospital's South Site. Transferring to part-time work would have resulted in a significant cut in Norville's salary and benefits, while a move to the South Site, according to numerous witnesses at trial, would have come at a significant cost in lost seniority. The jury thus might conclude that the positions to which the hospital proposed reassigning Norville were not "comparable" within the meaning of the ADA. Moreover, Norville met her burden of creating a jury question as to whether a comparable job was available. The radiology nurse position was vacant, and, as discussed above, the record displays a genuine factual dispute regarding her qualifications for that job. *See supra* Part I.B.

Under these circumstances, the court should have instructed the jury that an offer of an inferior position does not qualify as a reasonable accommodation when a comparable position is available, and charged the jury with determining whether the positions SIUH proposed were in fact inferior and whether a comparable position was vacant. Without such an instruction, the jury charge constituted an

---

position on the sole basis that Laureano was more qualified for the job. *See Gurary v. Winehouse,* 190 F.3d at 44 (2d Cir.1999) (noting that a party may not advance theories on appeal that it did not argue before the district court).

incomplete and misleading statement of the applicable law. As delivered, the instruction implied that any proposed accommodation is reasonable, and satisfies the defendant's obligation, so long as it does not pose an undue hardship for the defendant. When the employer proposes reassignment as a form of accommodation, however, the law is clear that the offer of an inferior position does not satisfy the employer's duty of reasonable accommodation if a comparable position is vacant. The charge therefore may have misled the jury about the meaning of the term "reasonable" under the ADA. Furthermore, it gives the misimpression that a disabled employee does not have the right to reject a proposed accommodation if it is inferior to her former job. Taken as a whole, the charge suggests that an employer may offer any accommodation that does not cause an undue hardship, including reassignment to an inferior position, and that the plaintiff is required to accept any such accommodation the defendant proposes. The district court therefore erred by failing "adequately [to] inform the jury of the law." *Pahuta,* 170 F.3d at 135.

There can be no doubt that this error prejudiced Norville. The jury found in her favor on the first four elements of her ADA claim, concluding that Norville was disabled, that she could perform fundamental job tasks with reasonable accommodation, and that she had requested such accommodation from SIUH. It further found, however, that the hospital had reasonably accommodated her disability, and consequently returned a verdict for the defendant. Had the trial court instructed the jury that an inferior position is not a reasonable accommodation when a comparable one is available, the jury might have found—though it would not have been compelled to find—that SIUH had breached its duty to accommodate Norville.

 Finally, although Norville's counsel did argue to the jury in summation that SIUH's offers of inferior positions were not reasonable under the ADA, such argu-

ment does not compensate for the court's erroneous instruction. That a party has the chance to argue its legal theory to the jury during trial does not relieve the trial court of its responsibility to instruct the jury fully and clearly on the applicable law. *Cf. Carvel Corp. v. Diversified Management Group, Inc.,* 930 F.2d 228, 230 (2d Cir.1991) ("A litigant is entitled to have the jury instructed as to his claims and theories of law if supported by the evidence and brought to the attention of the court.") Indeed, by explicitly instructing the jury that "the plaintiff does not have the right to choose her reasonable accommodation," the court likely nullified Norville's argument at summation that the proposed reassignments were unreasonable. So instructed, the jury easily could have concluded that Norville's characterization of the offered positions as unreasonable was irrelevant.

In sum, absent an accurate instruction on the legal definition of "reasonable accommodation," the jury was unable fully to evaluate whether the hospital's offer of part-time or South Site positions satisfied its duty of accommodation under the ADA. The court's error thus was not harmless and compels reversal of the verdict in favor of the hospital.

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of judgment as a matter of law in favor of SIUH on Norville's race and age discrimination claims. We reverse the jury's verdict with respect to Norville's ADA claim and remand the case for further proceedings consistent with this opinion.