*877 OPINION OF THE COURT
Joseph J. Maltese, J.
Petitioner, Thomas Búcaro, is a tenured associate professor employed by the College of Staten Island (CSI) of the City University of New York (CUNY), with a hearing disability. The respondent, Tomas Morales, is the current president of CSI. Due to professor Bucaro’s hearing disability, CSI has provided him with a computer assisted real-time transcription (CART) court reporter and has assigned him to supervise and teach the social work field instruction internship courses for many years. The reduced classroom hours of those courses, along with the use of the CART court reporter, has served as a “reasonable accommodation” for professor Bucaro’s hearing disability. In the spring of 2007, CSI employees omitted professor Bucaro’s regularly scheduled field instruction internship course from the offerings for the fall 2007 semester without his knowledge or consent. Professor Búcaro claims that CSI employees intentionally left him off the fall 2007 schedule in retaliation for his requests for accommodations, as well as other complaints and grievances.
Petitioner seeks an order pursuant to CPLR 7803 to determine if the respondent, president of the College of Staten Island, City University of New York, or its officers, violated the Americans with Disabilities Act,[1] sections 503 and 504 of the Federal Rehabilitation Act,[2] and the New York State and New York City Human Rights Laws.[3]
This court holds that removing petitioner’s “reasonable accommodation” without notice or consent is a violation of the federal Americans with Disabilities Act (ADA)[4] and the Equal Employment Opportunity Commission (EEOC) Regulations and Guidelines.[5] Since CSI changed the “reasonable accommodation” for its disabled employee, it shall create another “reasonable accommodation” forthwith.
Facts
Professor Búcaro holds a Doctor of Social Work degree and is a licensed Master of Social Work. In addition, he holds a Juris Doctor law degree and is also a licensed New York attorney. He *878 has been at CSI for over 30 years where he serves as the field instruction coordinator for the social work internship programs.
Professor Búcaro wears a hearing aid and reads lips in order to communicate with people. Since it is easier for him to communicate with individuals in a one-on-one session, he claims teaching in a classroom is more difficult because it requires communicating with up to 15 students per class. In order to assist him in communicating with his classes of students, he had previously requested that CSI make “reasonable accommodations” in compliance with the ADA for a classroom with microphones, speakers and screens, which was granted by the college. However, when the microphone and speakers proved to be inadequate for his hearing disability, professor Búcaro requested a CART court reporter and screens so that students who spoke with him would have their comments or questions recorded by the court reporter, who in turn would immediately transcribe those statements onto a computer screen that he could read. The professor could then directly respond to the students in a series of questions and answers. Despite the fact that CSI has granted this “reasonable accommodation,” which is an expensive cost to the college, professor Búcaro claims that using the CART court reporter is awkward, tedious, and physically draining. Because of his progressively worsening hearing condition, professor Búcaro prefers to have the least amount of time in the classroom with the CART court reporter, which would also be less expensive to CSI.
Professor Búcaro created the social work Field Instruction I (SWK 451) and the Field Instruction II (SWK 461) internship courses. Each course is a six credit class which is offered each fall and spring, respectively. They meet each week for two hours per week in the classroom and four hours per week in the field at a participating social work agency, where the professor deals one on one with students and social workers. It is undisputed that professor Búcaro possesses the requisite education, training and experience to teach social work students at CSI. He has taught the day session field instruction courses for several years. Professor Búcaro claims that his assignment of teaching both of these courses has been an acceptable “reasonable accommodation” to him in compliance with the ADA for several years.
In the spring of 2007 when the fall class schedule was posted on the CSI Web site to facilitate the registration of the students for the fall 2007 semester, only an evening session of the Field Instruction internship course was offered to be taught by profes *879 sor Brandler, another tenured professor. The day session of that course, which professor Búcaro claims he has taught for 30 years, was not offered. When professor Búcaro informed CSI administration of this fact sometime in April of 2007, the college amended the on-line schedule on or about May 8, 2007 to include his Field Instruction I session.
However, professor Búcaro asserts that, by May 8th, the small group of potential social work senior students, who needed that course to complete the program, had already registered for professor Brandler’s evening session of the Field Instruction I internship. Indeed, between May 8, 2007 and August 19, 2007 not one student had registered or transferred into professor Bucaro’s day section. Accordingly, on August 19, 2007, the day section of Field Instruction I was officially cancelled due to lack of enrollment.
Each professor needs 21 credits per year to remain as a paid full-time associate professor. Professor Búcaro claims that those students who would be enrolled in his regular Field Instruction I, six credit course in the fall would also be required to then take the second semester Field Instruction II, six credit course in the spring. Professor Búcaro also receives three credit hours each semester for supervising the internship program as the social work field training coordinator. Thus, teaching the Field Instruction I and II courses (six credits each) plus three credits each semester as the field work coordinator equals 18 credit hours plus his three “banked” hours would total 21 hours, which would satisfy the requirement for full-time pay. In other words, this schedule would require that he only teach two hours per week with the CART reporter service each semester, which he claims has been his “reasonable accommodation” over the past several years.
However, since his day session of the Field Instruction I internship in the fall of 2007 is not offered, he will be carrying a light load this semester of only seven credits — three credits for coordinating the field work internship program and four credits by teaching an alternative course, “Social Planning,” assigned to him by his department chair. Professor Búcaro has another three hours credited or “banked” for this year. Therefore, if he applied those three credits to the fall semester, he would have 10 credit hours for the fall semester and 11 credit hours to teach for the spring 2008 semester. He asserts, however, that, as a result of his hearing disability, he needs to use the three banked hours to lighten his load in the spring.
*880 Since there is now only the evening session of Field Instruction internship being offered in the fall of 2007 due to the late posting of professor Búcaro’s day session, he seeks that CSI reinstate his previous “reasonable accommodation.” Specifically, he is seeking to teach the evening Field Instruction I course that was always scheduled to be taught by professor Brandler, another full time professor. In turn, professor Brandler could teach Social Planning, a four credit course now scheduled to be taught by professor Búcaro or SWK 310, Human Behavior in the Social Environment, which is currently scheduled to be taught by professor Angel, a part-time adjunct professor who would be terminated for this semester as a result of being “bumped” by a tenured full-time faculty member.
Professor Búcaro is now scheduled to teach Social Planning, a four credit hour course (3 hour 20 minute class) with the CART court reporter, which he claims is too long a period of time to use the CART. He testified, however, that he has taught SWK 378 every other year. Interestingly, on August 25, 2007, while this order to show cause was pending for a hearing, professor Búcaro requested that his department chair also assign him to teach SWK 200, Introduction to Social Work, another four credit hour class that meets two times per week for 1 hour and 55 minutes per session, for which he will also need the CART services. That move would “bump” professor Lambert, another adjunct professor, who is acting as a full-time professor this semester, by terminating her from that course. Professor Búcaro asserts that under the CUNY employment contract, adjunct professors have no rights and may be “bumped” from courses even in the week in which they have commenced. Of course, such a late termination of adjunct professors does not offer them the opportunity to get an alternative position.
Professor Búcaro claims that the initial nonposting of his regular Field Instruction I course was no oversight by the department chair. He claims it was a retaliatory act for all of the grievances and complaints filed by him. Indeed, he has testified that he has a pending law suit against the permanent department chair, professor Jacqueline LeBlanc, for civil rights violations. He asserts that the acting department chair, professor Goode, intentionally left him off the schedule to retaliate against him because of all the trouble and expense he has cost the department and CSI, because of his constant requests for “reasonable accommodations” due to his hearing impairment and other complaints that he has publicized such as the loss of accredita *881 tion of the social work program at CSI due to lack of interest by the department chair and former president of CSI.
Discussion
The Americans with Disabilities Act[6] states, in pertinent part, that an employer may not “discriminate against a qualified individual with a disability because of the disability of such individual.”[7] It also provides that discrimination includes “not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.”[8] The ADA further states, in part, that “reassignment to a vacant position” is a type of reasonable accommodation.[9] However, the ADA’s legislative history confirms that Congress did not intend that a “reasonable accommodation” requires bumping other employees.[10]
The EEOC, which coordinates enforcement of the ADA and the Rehabilitation Act, states in its regulations that “reasonable accommodation means . . . [m] edifications or adjustments . . . that enable a qualified individual with a disability to perform the essential functions of that position.”[11]
The Rehabilitation Act § 504 provides in pertinent part:
“No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency.”[12]
To establish a prima facie case under the Rehabilitation Act, the petitioner has the burden to show that (1) he is a person with a disability under the Act; (2) he is “otherwise qualified” for the position he seeks; (3) he was excluded from the position in question solely because of his disability; and (4) the program sponsoring the position receives federal funding. It is undisputed *882 that professor Búcaro is a person with a disability who is qualified to teach social work classes and that CSI, a public college, receives federal funding directly or indirectly. At issue, however, is whether he was excluded from his traditional teaching assignment because of his disability.
Both counsel for professor Búcaro and CSI cited to US Airwqys, Inc. v Barnett,[13] a divided 5-4 U.S. Supreme Court decision from 2002, as controlling precedent. In Barnett, a case decided under title I of the ADA, the Supreme Court faced the issue of “the relationship between seniority systems and the plaintiffs need to show that an ‘accommodation’ seems reasonable on its face.”[14] Barnett, a US Airways baggage handler, injured his back and requested a transfer to a mail room position that had recently become available. Thereafter, he was given a less physically demanding mail room position that he held for nearly two years. Two more senior employees sought the same mail room position and one was eventually granted the position based upon a preestablished seniority system at US Airways. Justice Stephen Breyer writing for the majority of the Supreme Court in Barnett held that a preexisting company seniority system of job selection may not be violated in order to accommodate disabled employees with less seniority from other nondisabled employees seeking the same assignment.[15] However, Justice Breyer then added that while “the ADA may not trump in the run of cases” the presence of a seniority system, “[t]he plaintiff might show that the system already contains exceptions such that, in the circumstances, one further exception is unlikely to matter.”[16]
“But . . . the plaintiff must bear the burden of showing special circumstances that make an exception from the seniority system reasonable in the particular case. And . . . the plaintiff must explain why, in the particular case, an exception . . . can constitute a ‘reasonable accommodation’ even though in the ordinary case it cannot.”[17]
Justice Stevens, in his concurring opinion, added that other factors may be considered, such as whether the disabled employee’s requested accommodation should be viewed as an *883 assignment to a vacant position, or as the maintenance of the status quo; and exactly what would be the impact upon other employees by granting the employee’s request.[18]
Justice Sandra Day O’Connor, in a concurring opinion, determined that since the company imposed seniority system is not a legally enforceable system, it may be filled with exceptions to that policy.[19] When the mail room position was vacant, the disabled employee could make a request for the accommodation. She concludes that making an exception from the seniority system to accommodate a disabled person will in most cases appear to be reasonable.[20]
Justices David Souter and Ruth Bader Ginsburg dissented from the majority decision in that it did not go far enough.[21] Indeed, they found that keeping Barnett in his mail room job maintained the status quo and did not create an unmanageable ripple effect by bumping other employees or overstepping an inordinate number of seniority levels by remaining in that position.[22] They concluded that the burden should have initially shifted to the employer to show that a violation of the seniority scheme would have worked an “undue hardship” on the company or the other nondisabled employees.[23]
Justices Antonin Scalia and Clarence Thomas joined in another dissent arguing that the ADA eliminates workplace barriers only if a disability prevents an employee from overcoming those barriers that would not be barriers but for the employee’s disability.[24] Following their argument, this would include removing physical barriers or giving accommodations such as microphones and speakers, as well as a CART court reporter with dual screens, but not less working hours. They argue that it would not include a change of work place rules or practices, such as a seniority rule or a best qualified applicant rule. To interpret the ADA otherwise would make the provision of reasonable accommodation “a standardless grab bag — leaving it to the courts to decide which workplace preferences . . . can be *884 deemed ‘reasonable’ to ‘make up’ for the particular employee’s disability.”[25]
This court has reviewed the additional cases submitted by the respondents and the petitioner and finds that the facts are not on point.[26] Moreover, none of the cases yield any further instruction on the law than the U.S. Supreme Court’s guidance and interpretation on the application of the ADA enunciated in US Airways, Inc. v Barnett[27]
Professor Búcaro has never asserted his right to “bump” professor Brandler, another full-time tenured professor, from her evening Field Instruction I course based upon a preestablished CSI seniority system in selecting courses to teach. Instead, he argues that since CSI removed his daytime field training course, that served as a “reasonable accommodation” to him, then CSI should reinstate the “status quo” by allowing him to resume teaching the field training course.
Nonetheless, professor Búcaro apparently has been employed by CSI longer than professor Brandler, whom he is seeking to bump in order to effectuate his suggested “reasonable accommodation,” but he never raised seniority as a reason to bump another full-time tenured professor. He has, however, asserted most vigorously that adjunct professors have no rights and may be bumped at will. But that really does not become an issue until the full-time tenured professor Brandler is first bumped out of her evening Field Instruction course to accommodate professor Búcaro. Rather, like the petitioner in Barnett,[28] Búcaro seeks continuation of the status quo.
This raises the important question of what conditions represent the status quo in this case? Professor Búcaro contends that the status quo and “reasonable accommodation” for his hearing disability have been twofold — (1) he receives the assistance of the CART services, and (2) he has had only two hours per week, per semester of classroom contact hours, which limits the time in which he uses the CART services.
On the other hand, CSI argues that the “reasonable accommodation” is the CART services which it has given and will *885 continue to give the petitioner for each of his classes, regardless of how many hours are taught in the classroom. CSI’s argument is analogous to the dissent by Justices Scalia and Thomas in Barnett. They argue that once the “reasonable accommodation” to remove the physical impediment has been achieved, the employee should then be able to work just like any other employee, without any other preferential assignments. Dean Francisco Soto testified that the job of professors is to teach assigned classes. No professor has a proprietary right to a particular teaching assignment or course. It is the specific role of the department chairs and the CSI administration in general to assign professors to teach courses within their discipline. In theory, all proposed classes are vacant or unassigned until the department chair assigns a professor to teach a particular class. In practice, however, the professor usually teaches the same courses each year. Therefore, the department chair may reassign professor Búcaro, just like any other professor to any course he is capable of teaching, regardless of the number of in-class contact hours. In other words, the number of in-class hours should not be a factor once the college has given him the CAJRT services as his “reasonable accommodation.”
Findings and Conclusions
This court heard the credible testimony of professor Búcaro, Francisco Soto, the CSI humanities dean, and Kevin Antoine, Esq., the director of the Government Affairs and Diversity Office, who is also the ADA compliance officer for CSI. This court finds that once the CSI administration became aware that professor Bucaro’s course was not offered, it quickly added it to the schedule of fall offerings. Unfortunately, between May 8 and August 19, 2007, no one registered for the course. While CSI did belatedly attempt to restore professor Bucaro’s day session course, it appears that it was doomed to be underenrolled without actively soliciting those senior students eligible to take the course. Instead, CSI assigned him to an alternative class with the use of CART services which is scheduled for this semester.
Apparently there have been a series of battles waged by professor Búcaro against CSI and some grievances filed against him. Hence, it is not unreasonable to infer that the supposed inadvertent or negligent omission of his regularly scheduled teaching assignment, one which he apparently has had year in and year out for many years, was not a mere oversight. Indeed, it *886 may be viewed as a retaliatory act, but this court does not make that finding at this time. Professor Bucaro’s teaching schedule with the accompanying two hours of CART services was the long term arrangement which gave him a “reasonable accommodation” due to his hearing disability. To remove that “reasonable accommodation” without his knowledge, consent, or consultation violates the ADA.[29] Moreover, the actions or inactions on the part of someone at the college created this situation which professor Búcaro has sought to remedy at CSI before coming to court. Instead of timely responding to his request one way or another, CSI did not act on his request to teach the evening session of Field Instruction I until the day of this hearing, when CSI finally submitted a denial of his request in writing.
Since members of the college created this situation where the established “reasonable accommodation” was removed intentionally or unintentionally without the consent or consultation with the ADA protected employee, the employer CSI now has the obligation to either reestablish that “reasonable accommodation” or substitute another one forthwith.[30] It is not the role of the court to micromanage the schedules at CSI in order to give professor Búcaro his suggested solution, which entails rearranging the teaching assignments of another tenured professor during the first week of classes and terminating part-time adjunct professors. However, it is the role of courts to review facts and the law to ascertain whether there was a violation of the Americans with Disabilities Act and/or the federal Rehabilitation Act.
The court is aware that this is not a situation where professor Búcaro is losing a position as a full-time tenured professor; this is a matter of having him teach more traditional classes like the other professors in his department. Hence, there is no outward discrimination in removing him from his position. Teaching the field training classes is arguably a lesser amount of time in a classroom using the CART services, which is preferred by professor Búcaro. But the professor’s preference is not the primary factor in arriving at a “reasonable accommodation.”
However, CSI has adhered to professor Bucaro’s preference, which has served as a reasonable accommodation for many years. CSI cannot change that status quo without a bona fide reason. Here, they claim that it was inadvertent and not *887 intentional. At least for this semester, CSI has a reasonable explanation for the change in circumstances. In the future, CSI should attempt to restore professor Búcaro to the status quo of teaching the Field Instruction course with reduced in-class contact hours if possible, or provide an equivalent teaching assignment and have a bona fide reason for not restoring his former teaching assignments.
This court finds that through negligence, inadvertence, or an intentional act CSI removed part of the existing “reasonable accommodation” of a long time disabled person who was protected by the ADA. Accordingly, this court orders that the college immediately grant professor Búcaro another “reasonable accommodation” due to his hearing disability that will enable him to remain as a full-time employee without creating an undue hardship on CSI or its employees forthwith. This may entail giving him another vacant or unassigned class to teach or having him supervise an independent reading course or some other type of constructive credit for the fall 2007 semester in order that he may acquire a sufficient number of hours for the academic year to remain a full-time professor.
Professor Búcaro is a protected individual under the ADA, who must be dealt with reasonably without displacing or firing other existing employees. Hereafter, CSI and professor Búcaro need to agree on a “reasonable accommodation” in his teaching schedule consistent with his hearing disability so that he need not carry an overload of over 11 credits in the spring 2008 semester.
Accordingly, it is hereby ordered that the respondent employer CSI shall create in consultation with the petitioner a “reasonable accommodation” for his teaching schedule that will enable him not to carry an overload of courses beyond 11 credits in the spring 2008 semester.

. 42 USC § 12101 et seq.

. 29 USC §§ 793, 794.

. Executive Law § 296; Administrative Code of City of NY § 8-107.

. 42 USC § 12101 et seq.

. 29 CFR part 1630.

. 42 USC § 12101 et seq.

. 42 USC § 12112 (a).

. Id. § 12112 (b) (5) (A).

. Id. § 12111 (9) (B).

. HR Rep 485 (II), 101st Cong, 2d Sess, at 63, reprinted in 1990 US Code Cong & Admin News, at 303, 345.

. 29 CFR 1630.2 (o) (1) (ii).

. 29 USC § 794 (a).

. 535 US 391 (2002).

. Id. at 402.

. Id. at 405.

. Id.

. Id. at 405-406.

. Id. at 407.

. Id. at 411.

. Id. at 410-411.

. Id. at 420.

. Id. at 423.

. Id. at 424.

. Id. at 413.

. Id. at 414.

. See Resnick v 392 Central Park W. Condominium, 2007 WL 2375750, 2007 US Dist T.F.XTS 60232 (SONY 2007); Castells v Fisher, 2007 WL 1100850, 2007 US Dist LEXIS 30188 (ED NY 2007); Norville v Staten Is. Univ. Hosp., 196 F3d 89 (2d Cir 1999).

. 535 US 391 (2002).

. Id.

. 42 use § 2000e-2 (a) (1); § 12112 (a).

. See Dalton v Subaru-Isuzu Automotive, Inc., 141 F3d 667, 677 (7th Cir 1998).