SUMMARY ORDER
Plaintiff-Appellant Paul Berube (“Be-rube”) appeals from a judgment of the United States District Court for the District of Connecticut (Bryant, J.), entered February 26, 2008, granting summary judgment to Defendant-Appellee Great Atlantic & Pacific Tea Company, Inc. (“A & P”) on his claims of discrimination under the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 621 et seq., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., and declining to exercise supplemental jurisdiction over his state law claims. Berube appeals only the ADEA and ERISA claims.[1] We assume the parties’ familiarity with the underlying facts, procedural history, and specification of the issues on appeal.
Berube was formerly employed by A & P as a liquor store manager, a position that included bookkeeping responsibilities. At the time he was offered the position, he was promised by A & P that he would receive progressive discipline before termination of his employment. A & P’s general, although not universal, practice was to provide a four-step disciplinary process for continuing violations: a verbal warning, a written warning, a suspension, and finally termination. In 2003, A & P changed its invoicing procedures. Berube initially failed to comply with the new procedures and ultimately was transferred to a different store.[2] After an audit at the new store revealed that Berube was still using the old inventory method, A & P verbally ordered him to use the new method. It is undisputed that plaintiff complied with this instruction; nevertheless, A & P suspended Berube approximately two weeks later and terminated his employment shortly thereafter. Although, before he was terminated, Berube was shown a document regarding his alleged mismanagement of invoices at his old store in Bristol and was suspended at that time, neither the document nor the suspension cited Berube’s conduct after he was specifically told to use the new inventory method. Moreover, Berube was not given the opportunity to return to work after being shown the document and being placed on suspension, and A & P does not rely on the document or the suspension to argue that Berube received progressive discipline. See Defendant’s Br. 35.
We review de novo a grant of summary judgment, which may be given where the *686 record, viewed in the light most favorable to the non-moving party, shows no genuine issue of material fact. Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On summary judgment, plaintiffs ADEA claim is analyzed under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff bears the initial burden to establish a prima facie case of age discrimination by showing that “(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.” Roge v. NYP Holdings, 257 F.3d 164, 168 (2d Cir.2001). We have characterized plaintiffs prima facie burden as “minimal” and “de minim-is.” Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir.2001) (internal quotation marks omitted). The burden of production then shifts to the employer to demonstrate a legitimate, non-diseriminatory reason for the adverse employment decision, and finally back to the plaintiff to show that the proffered nondiscriminatory reason is pretextual. McDonnell Douglas, 411 U.S. at 804-05, 93 S.Ct. 1817.
Berube seeks to raise the inference of discrimination required for his prima facie case by showing, inter alia, that A & P treated younger, similarly-situated employees more favorably than he. Employees used as comparators in such an analysis need not be identically situated, but only must be similarly situated in all material respects. See, e.g., McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001). “What constitutes ‘all material respects’ ... varies somewhat from case to case and, as we recognized in Norville, must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness.” Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir.2000) (citing Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 96 (2d Cir.1999)). “Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury.” Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir.2003).
We find that plaintiff has proffered sufficient evidence to make out a prima facie claim of discriminatory intent by demonstrating that younger, similarly-situated employees received progressive discipline for transgressions of comparable seriousness while he did not. Berube identifies at least four comparators, Brian Badlowski, Ryan Fleet, Sid Prasad, and Frank Sen-gotta, who were liquor store managers younger than he and who were cited for violating A & P’s workplace rules around the same time plaintiff was fired. Each of the comparators received written warnings as a disciplinary method, and none were terminated for disciplinary violations. Under the standard set forth in Graham, the fact that Berube had a different supervisor from the employees he cites as comparators does not appear sufficient in itself to preclude Berube from showing that he was subject to the same workplace standards and disciplinary procedures. See id.; Norville, 196 F.3d at 97. Although Be-rube’s district manager may not have given written warnings to employees as a general practice, Berube has produced substantial evidence that progressive discipline was a general practice at A & P and that managers expected to receive such discipline. We cannot say as a matter of law that the employees Berube cites were not similarly situated in terms of work *687 place standards and disciplinary procedures.
Nor is it sufficient simply to point out, as A & P does, that the comparators were disciplined for issues “not related to a failure to comply with the new recordkeep-ing procedures.” Appellee’s Br. 87. Rather, Berube need only demonstrate that the conduct for which the comparators were disciplined was of “comparable seriousness” to his recordkeeping transgressions. Graham, 230 F.3d at 40. There are certainly differences between the evinced conduct and that of Berube: Badlowski had a smaller invoice discrepancy and Fleet and Prasad were mostly cited for being “sloppy,” while Sengotta’s larger inventory discrepancy may have been partially due to the conduct of eoworkers. Yet these differences are not so significant that a reasonable juror would be precluded from deciding that these employees engaged in conduct of comparable seriousness. Fleet and Prasad’s messiness resulted in the loss of “Rip logs” used to track the store’s performance, much like Berube’s invoices. To determine relative severity of conduct between Berube and Badlowski, it is difficult to tell whether the $2,300 discrepancy in a single week of Badlowski’s invoices should be compared to the $15,000 swing in Berube’s “inventory,” or rather to the $1,395.97 discrepancy reflected in random invoices selected from a month of Berube’s records. As for Sen-gotta, even if other co-managers were partially responsible he was still the only store manager at a store with a $95,000 short inventory, making his conduct facially similar to if not more serious than Be-rube’s. This is a sufficient showing to meet the minimal burden imposed by McDonnell Douglas’s first step. We express no view as to steps two and three, which the district court did not reach.
We agree with the district court’s grant of summary judgment on plaintiffs ERISA claim. Section 510 of ERISA makes it “unlawful for any person to discharge ... or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan.” 29 U.S.C. § 1140. To succeed on a Section 510 claim, a plaintiff must demonstrate the employer specifically intended to interfere with benefits. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140, 111 S.Ct. 478,112 L.Ed.2d 474 (1990). Moreover, to defeat summary judgment a plaintiff must adduce some evidence from which a reasonable jury could conclude that an employer intended to reduce benefits under ERISA. Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir.1997); see also Dister v. Cont’l Group, Inc., 859 F.2d 1108, 1111 (2d Cir.1988) (“An essential element of plaintiffs proof under the statute is to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510.”). Plaintiff has failed to meet this burden, merely speculating that the cost of his skin cancer treatments was the cause of his termination. No reasonable jury could conclude based on the record before us that A & P intended to deprive Berube of his medical benefits.
All arguments not otherwise discussed in this summary order are found to be moot or without merit.
For the foregoing reasons, the judgment of the district court granting summary judgment on the ERISA claim is hereby affirmed. The judgment is reversed as to the district court’s finding that plaintiff has not made a prima facie case of discrimination and remanded for further proceedings consistent with this opinion, including further analysis under McDonnell Douglas.

. Berube did not contest summary judgment on the ADA claim below, which was therefore properly granted. The district court's observations with respect to the merits of his ADA claim should not, however, be taken to have any collateral estoppel effect with respect to any future claim under the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen.Stat. § 46a-51 et seq., that he might bring.

. The parties dispute the reason for the transfer. A & P asserts that an audit of Berube's store indicated that he was adhering to the old guidelines, and it transferred him as a result. Berube identifies at least some documentary evidence that the audit occurred after his transfer, and thus could not have supplied the motivation.