Mahendradat DEBIDAT and
James Walsh, Plaintiffs,

v.

MARRIOTT, INTERNATIONAL, INC.,
New York Marriott East Side Hotel,
and Strategic Hotel Capital, Inc., Defendants.

No. 06 Civ. 3561(MGC).

United States District Court,
S.D. New York.

Sept. 29, 2008.

Ballon Stoll Bader & Nadler, P.C, by: Marshall B. Bellovin, Esq., Susan Schneiderman, Esq., New York, NY, for Plaintiffs.

Greenberg Traurig, LLP, by: Brian S. Cousin, Esq., Eric B. Sigda, Esq., Lauren R. Tanen, Esq., New York, NY, for Defendants.

## OPINION

CEDARBAUM, District Judge.

Mahendradat Debidat sues Marriott International, Inc., New York Marriott East Side Hotel (collectively "Marriott"), and Strategic Hotel Capital, Inc. pursuant to the Human Rights Laws of New York State and New York City for racial discrimination in terminating his employment. James Walsh also sues defendants pursuant to the Human Rights Laws of New York for racial discrimination in terminating his employment and for discriminatory retaliation in an earlier demotion. Marriott moves for summary judgment on all claims. For the reasons that follow, Marriott's motion is granted.

## BACKGROUND

This diversity action was removed from state court. The following facts are undisputed, unless otherwise indicated.

### I. Mahendradat Debidat

Debidat is an East Indian native of Guyana who describes himself as Caucasian. He began his employment with Marriott in November of 1990. At the time of his termination in June of 2004, he was employed as a night shift "Loss Prevention" supervisor at Marriott's Lexington Avenue hotel. Debidat was an at-will, non-union employee.

Marriott's employment rules provide that sleeping on duty is prohibited and can result in immediate termination. Sleeping during one's break time is not prohibited. In the spring of 2004, David Alexander, director of Loss Prevention, received reports that Debidat was sleeping during his work hours in a sub-basement storage room. According to at least one source, Debidat used a mattress to partially conceal himself while he slept. Debidat disputes this report.

Early in the morning of June 3, 2004, Alexander, Richard Bishop, the assistant director of Loss Prevention, and Mark George, the night manager, found Debidat sleeping in the sub-basement storage room and suspended him from his job pending termination. Alexander is black; Bishop and George are Caucasian. The parties dispute whether Debidat was sleeping on duty or during his break.

Alexander, Bishop, and George testified that they found Debidat sleeping at 5:05 AM. Debidat testified that they entered the room at 4:45 AM. That night, in addition to working his regular night shift from 11:00 PM to 7:00 AM, Debidat was working overtime from 7:00 PM to 11:00 PM. Debidat was allowed a one hour meal break during his night shift and an extra half-hour break during his overtime shift. Debidat combined the break times into one ninety-minute period, giving him more time to sleep during his break. According to Karen Plaut, the hotel's human resources director at the time, the overtime break should have been taken during the overtime period, not at a later time in a different shift. In other words, Debidat was not allowed to combine his break time into a ninety-minute block.

Debidat says he took a ninety-minute break from 3:45 AM to 5:15 AM. Ronald Ferry, a security officer, testified at Debidat's unemployment insurance hearing that Debidat took his break at 3:00 AM. Thus, he was only supposed to be on break from 3:00 AM to 4:00 AM. The work schedule indicates that Debidat should have been working after 4:00 AM, but Debidat testified that he told Walsh that he would not be at his scheduled posts because he was taking his break at 3:45 AM instead of 3:00 AM.

Debidat was terminated for sleeping on the job on June 9, 2004. He argues that this was a pretext for racial discrimination. He seeks to prove discrimination by demonstrating disparate treatment through ex-

amples of black employees who slept on the job but were not terminated. Debidat appealed his termination to a peer review panel, which upheld the termination. Debidat had no prior disciplinary incidents.

## II. James Walsh

Walsh, a Caucasian, was employed by Marriott since February of 1996. He was hired as a Loss Prevention officer ("LPO") and promoted to Loss Prevention supervisor in May of 1998. He was an at-will, non-union employee.

In July of 2002, Walsh, along with a number of other Marriott employees, signed a petition in favor of reinstating the employment of two housekeepers who were represented by a union. Walsh was informed that as a Loss Prevention supervisor, it was inappropriate for him to have signed a petition criticizing management because he was considered an extension of management. Marriott demoted Walsh back to an LPO because of his signing of the petition.

Walsh appealed the demotion to the human resources department ("HR"). Before and during this time, Walsh had also complained to HR about various abuses of office by Thomas Roche, the director of Loss Prevention. Walsh wrote a letter to J.W. Marriott, Jr., Chairman of Marriott, complaining of his demotion. In the letter, Walsh argued, at least in part, that he was demoted in retaliation for his comments about Roche.

Walsh alleges here that he was demoted because of his race. Eventually, Walsh's demotion was upheld, but Marriott retroactively restored a portion of his wages. Walsh received a written warning for having signed the petition. He had no disciplinary entries in his record prior to the demotion.

Marriott's employment rules provide that falsification of company records is a ground for immediate discharge. On June 3, 2004, the same night on which Debidat was found sleeping, Alexander and Bishop, who were pretending to be guests on floors patrolled by Walsh, noted that he delivered their check-out papers from 2:30 to 2:45 AM. Walsh recorded the time in his logs as being between 3:05 and 3:43 AM. This delayed time-logging practice facilitated the accumulation of short breaks into larger periods of break time, which Marriott believes were used for sleeping.

That night, Walsh was suspended pending termination for falsifying entries in the security log. He argues that he was following established practice and had not violated company policy. Bishop testified that it was against company policy to inaccurately record tasks as Walsh did. Plaut spoke with other LPOs, all of whom represented that they were told to report their time logs accurately.

On June 11, 2004, Walsh was discharged from his employment. He did not appeal his termination. Walsh argues that Marriott's justification for firing him was a pretext for racial discrimination. He attempts to prove his claims by showing disparate treatment with examples of black employees who were not demoted or discharged for similar conduct.

## DISCUSSION

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a genuine issue of fact exists, the court must "con-

strue the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003). Summary judgment is appropriate when "the nonmoving party [fails] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[A] plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir.2008).

## I. Discrimination

■■■ The standard for analyzing discrimination claims brought under the New York Human Rights Laws is the same as the federal standard for analyzing discrimination claims pursuant to Title VII of the Civil Rights Act of 1964. *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305 n. 3, 786 N.Y.S.2d 382, 819 N.E.2d 998 (2004). The plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To meet this burden, plaintiff must show "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb*, 521 F.3d at 138. "[T]he prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *Furnco Constr. Corp.*

*v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).

■■ The burden of production then shifts to the defendant to articulate "some legitimate, non-discriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. "If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of racial discrimination." *Holcomb*, 521 F.3d at 138. Plaintiff need only show that discrimination was "at least one of the motivating factors" in the employer's decision. *Id.* (internal quotations omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

Marriott argues that plaintiffs cannot make out a prima facie case that would give rise to an inference of discrimination and that, in any event, they are unable to carry their burden of proof for intentional discrimination.

### A. Debidat

#### 1. Prima Facie Case

■■ Marriott argues that Debidat cannot show any circumstances giving rise to an inference of racial discrimination. To establish a prima facie case, Debidat must demonstrate that his termination was "more likely than not based on the consideration of impermissible factors." *Furnco Constr.*, 438 U.S. at 577, 98 S.Ct. 2943.

■■ Debidat contends that a valid inference of discrimination can be drawn in this case because certain non-Caucasian employees were not fired for sleeping on the job. "A plaintiff may support an inference

of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably." *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 95 (2d Cir.1999). *See also McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282–83, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) (allegation that a black employee was not disciplined in the same manner as white employees for the same act was sufficient to state a claim under Title VII); *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817 (evidence that an adverse employment action was not equally applied across different races may be relevant in proving pretext).

■ In drawing such an inference on the basis of disparate treatment, plaintiff must show that he was similarly situated "in all material respects" with the comparators. *Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir.2000). "All material respects" must be judged on:

> (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and
> (2) whether the conduct for which the employer imposed discipline was of comparable seriousness.... Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical.

*Id.* at 40. Marriott argues that Debidat's comparators are invalid.

■ Debidat's first comparator, James Griffin, is a black LPO who, according to his responses to an interrogatory, was found sleeping in the security locker room on the same morning and around the same time that Debidat was found sleeping. Griffin was not terminated. Alexander, Bishop, and George all testified at their depositions that they did not see Griffin asleep that night. Marriott contends that Griffin was not a supervisor and that he was on his break at the time he was caught. Given the disputed facts regarding Griffin, Debitat's position on the facts surrounding Griffin's incident will be accepted as true for purposes of this motion. Aside from the difference in rank, Griffin makes for a reasonable comparator.

Daniel Senyah is Debidat's second comparator. Senyah, a black housekeeping employee, was found sleeping in a storage closet, but was only suspended for one day with pay. Marriott distinguishes Senyah because he was in a different department, had a different supervisor, and worked under different workplace guidelines. Senyah was also a union member, so he was employed under different standards than Debidat. In light of those differences, Senyah is not similarly situated to Debidat.

Debidat's third comparator is an unnamed bellman who was found sleeping and was reported to human resources. In addition to a lack of further relevant information, the bellman suffers from the same shortcomings as Senyah in serving as a reliable comparator.

Marriott provides a comparator named Herbert Howard, a black LPO who was discharged for sleeping on the job. Debidat objects to his inclusion as a comparator because his complete personnel file was not provided and because Debidat believes that Howard's conduct may have been more egregious than Debidat's. At the very least, it is undisputed that Howard was a black LPO who was fired for sleeping on the job. Here, as with Griffin, Howard appears to serve as a reasonable comparator, aside from the difference in rank.

Debidat was found sleeping and was suspended pending termination by two Caucasian supervisors and one black supervisor. He has presented evidence that Griffin, a

black LPO, was found sleeping, but was not terminated. His other two potential comparators are not similarly situated. Marriott has provided evidence that Howard, a black LPO, was terminated for sleeping on the job. Debidat does not proffer any further evidence to support an inference of discrimination, *e.g.*, harassment or derogatory comments. Given the lack of direct evidence of discrimination and the paucity of indirect evidence, Debidat has not established by a preponderance of the evidence that race was at least one of the motivating factors in his termination.

### 2. Pretext

■ Assuming that Debidat could establish a prima facie case, Marriott has supplied a non-discriminatory reason for terminating Debidat: sleeping on the job. To survive summary judgment, Debidat must show that a reasonable jury could find that Marriott engaged in intentional discrimination in terminating Debidat. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Debidat has failed to provide sufficient evidence to meet his burden. He provides no arguments as to why Marriott's explanation for terminating him was a pretext. In this case, the existence of a single reliable comparator without more is not enough for a reasonable finder of fact to conclude that racial discrimination was a factor in Debidat's termination. Even if more weight is given to Debidat's other comparators, there is still not enough evidence to allow a reasonable jury to find intentional discrimination.

### B. Walsh

### 1. Prima Facie Case

Walsh argues that he was terminated on the basis of race. To establish an inference of discrimination, Walsh proffers the testimony of Christopher Hassan, a former Marriott LPO officer who left the company before Walsh was terminated. Hassan testified in his responses to interrogatories that he engaged in the time-logging practice that Walsh was fired for, and that the practice was widespread under the previous director of Loss Prevention.

■ Walsh contends that he was subject to disparate treatment because other LPOs that engaged in the practice were not fired. Marriott argues that Walsh was the only LPO *caught* falsifying his records. Walsh also compares his termination for falsifying records to the case of Alton Parker, a black LPO who falsely registered a guest room in his name for friends, but was not fired. Marriott argues that Parker is a poor comparator because the conduct and nature of the records were different, Parker was off duty at the time, and Parker was disciplined by having his room discount privileges suspended.

Hassan's testimony does not indicate whether any other LPO was ever caught for falsifying records. It also does not indicate whether the time-logging practice was widespread under the current director of Loss Prevention. Even assuming that the practice was widespread, an inference of discrimination cannot be established if Walsh was the only one actually caught engaging in the prohibited practice. Parker, Walsh's only comparator, is not similarly situated because his fraudulent act did not relate to an essential duty of his job. Walsh presents no other evidence of discrimination. In light of the evidence proffered, Walsh has not established by a preponderance of the evidence that race was at least one of the motivating factors in his termination.

### 2. Pretext

Assuming arguendo that Walsh could establish a prima facie case, Marriott has a

legitimate, non-discriminatory reason for terminating Walsh: falsifying security log records. Walsh must now provide sufficient evidence upon which a reasonable jury could conclude that Marriott engaged in intentional discrimination in terminating Walsh. Walsh fails to meet this burden. In fact, Walsh does not even assert any arguments as to why Marriott's rationale for terminating Walsh was pretextual. The bare evidence presented is insufficient to survive summary judgment.

## II. Retaliation

■ Walsh alleges that he was demoted because of his race for signing a petition in support of two other employees. To make out a prima facie case for retaliation, "plaintiff must show that (1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action." *Forrest*, 3 N.Y.3d at 313, 786 N.Y.S.2d 382, 819 N.E.2d 998. The same burden-shifting standard described above applies to a retaliation claim. *Coffey v. Dobbs Int'l Servs., Inc.*, 170 F.3d 323, 326 (2d Cir.1999). Thus, if the employer can state a legitimate, non-discriminatory reason to justify the adverse employment action, then the presumption of discriminatory retaliation drops away and the plaintiff is left with the burden of proving that defendant intentionally discriminated against the plaintiff in retaliation for his protected activity. *Id.*

### A. Prima Facie Case

■ Walsh again tries to establish a prima facie case of discrimination based on disparate treatment. He notes that Garrett Clarke, a black supervisor who worked in the kitchen, signed the same petition as Walsh but was not reprimanded. Marriott contends that Clarke is not a proper comparator because he was a union member working in a different department. Wesley Peartree, a black timekeeper in the Loss Prevention department who also signed the petition but was not demoted, is Walsh's second comparator. Marriott states that Peartree was a union employee, and was neither a supervisor nor an LPO.

Clarke is not a similarly situated comparator. He worked in a different department with different workplace standards. Peartree was not a supervisor like Walsh was at the time of the signing of the petition. Both Clarke and Peartree were union employees operating under the terms of a collective bargaining agreement, whereas Walsh was an at-will employee. Thus, Peartree can function only as a limited comparator.

Walsh proffers no direct evidence of race being a factor in his demotion. On the strength of one dubious comparator, Walsh cannot establish by a preponderance of the evidence that race was a motivating factor in his demotion.

### B. Pretext

■ Even if Walsh had established a prima facie case, Marriott gave a non-discriminatory reason for demoting Walsh: that as a supervisor, he took a public position against management. It is legitimate for Marriott to expect its supervisors and managers not to contradict the company in a public dispute with its employees. Walsh does not indict Marriott's reason for demoting him. The weak comparators discussed above are not enough to sustain his retaliation claim. He fails to proffer evidence sufficient for a reasonable jury to conclude that Marriott demoted Walsh on the basis of race.

## III. Remaining Defendant

Strategic Hotel Capital, Inc. ("SHC") is not a party to this motion. However, there are no separate facts alleged against SHC. Plaintiffs cannot maintain their claims against SHC for the reasons set forth in this opinion. Accordingly, summary judgment will be granted dismissing the claim as to SHC. *See Ramsey v. Coughlin,* 94 F.3d 71, 74 (2d Cir.1996) ("Where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law.").

### CONCLUSION

Debidat and Walsh are unable to provide sufficient evidence for a reasonable jury to conclude that Marriott engaged in intentional discrimination. For the aforementioned reasons, Marriott's motion for summary judgment dismissing the case is granted. Summary judgment is also granted as to SHC. The Clerk is directed to close this case.

SO ORDERED.