VERMONT SUPERIOR COURT
Bennington Unit
207 South St
Bennington VT  05201
802-447-2700
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 317-11-17 Bncv



| Gates vs. Mack Molding Co., Inc. |
| --- |

## DECISION ON MOTION

This is a civil matter, post-judgment. Plaintiff Angela Gates has filed a motion for reconsideration of summary judgment in Defendant's favor.

Plaintiff makes two arguments.  First, Plaintiff contends the decision did not adequately consider her argument that Defendant failed to accommodate her when she returned to work on August 24, 2015. Second, Plaintiff contends the decision did not consider whether Plaintiff could fulfill the essential functions of the light duty job to which she sought reassignment as a reasonable accommodation in May of 2016.

Defendant Mack Molding Co., Inc. opposes the motion and argues that summary judgment was properly granted in its favor.

For the following reasons, Plaintiff's Motion for Reconsideration is **DENIED**.

### Background

Defendant filed a motion for summary judgment on September 24, 2019.  Plaintiff voluntarily dismissed several counts and opposed summary judgment on the remaining three counts.  Summary judgment was granted on April 5, 2021.[1]  Subsequently, Plaintiff filed a motion for reconsideration of the April 5, 2021 summary judgment decision on May 3, 2021.

The arguments Plaintiff raises in her motion for reconsideration predominately relate to her disability discrimination claim.

Plaintiff contends that the Court should not have granted summary judgment for Defendant because the Court did not adequately consider her argument that Defendant failed to accommodate her when she returned to work on August 24, 2015.  Plaintiff first contends "the Court overlooked the fact that Mack did not argue in its summary judgment motion that Angie could not perform the essential functions of her molding job with reasonable accommodations when she returned to work in August 2015."  Pl. Motion at 6.

---

[1] The Court granted Defendant's motion for summary judgment on Count Two, a claim for "Retaliation for Exercising Medical Leave Rights under Vermont's Parental and Family Leave Act"; Count Three, a claim for "Disability Discrimination, Denial of Reasonable Accommodations, under the Vermont Fair Employment Practices Act"; and on Count Four, a claim for "Retaliation for Filing Workers' Compensation Claim."

Vermont Superior Court
Filed 07/06/21
Bennington Unit

Plaintiff next contends that summary judgment was improper because the Court "did not evaluate Angie's ability to perform the essential functions of the finishing job she sought [in May 2016] and Mack's obligation to provide light duty even [to] employees with non-work-related injuries." Pl. Motion at 1.

Plaintiff's contentions are addressed chronologically.

## Analysis

### *August 24, 2015 disability discrimination allegation*

Plaintiff first contends reconsideration is appropriate because "the Court overlooked the fact that Mack did not argue in its summary judgment motion that Angie could not perform the essential functions of her molding job with reasonable accommodations when she returned to work in August 2015."

Plaintiff is correct in that Defendant did not make such an argument. The absence of this argument does not create a disputed material fact for determination at trial, however.

Defendant argued that summary judgment on Plaintiff's disability discrimination claim was proper as Defendant had no obligation to accommodate because Plaintiff did not request accommodation upon her return.[2] Defendant had no obligation to accommodate Plaintiff, absent an accommodation request or a need for accommodation that would have been apparent to Defendant in the absence of an accommodation request. Without such an obligation to accommodate, Defendant would have no reason to argue for summary judgment on the basis Plaintiff could not perform the essential functions of her Molder position with reasonable accommodations. The question of whether the summary judgment decision considered the absence of this argument is immaterial.

The issue relevant to this motion for reconsideration is not whether Defendant argued that Plaintiff could accomplish the essential functions of the Molder position with reasonable accommodation. Rather, the material issue is whether Defendant had an obligation to accommodate when Plaintiff returned to her Molder position on August 24, 2015.

An employer's obligation to accommodate is trigged when an employee requests accommodation, or when an employee has a need for an accommodation that is apparent to the employer despite the absence of an express accommodation request. See, e.g., *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009) (The duty to accommodate "is ordinarily activated by a … sufficiently direct and specific" request for an accommodation.); *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008) (Accommodation obligation may arise when the need for accommodation is apparent to the employer even if the employee has not requested it or has had trouble articulating the need for accommodation); *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir.2006) ("[G]enerally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.") (internal quotations and citations omitted). A Plaintiff may be excused from the accommodation request requirement where the nature of their disability is such that the employer should have known of the disability. See *Costabile v. New York City Health and Hospitals Corporation*, 951 F.3d 77, 82–83 (2d Cir. 2020) (rejecting claim, explaining that because "Plaintiff failed to plausibly allege that Defendants knew or should reasonably have known he was disabled,

---

[2] Defendant did not contend it could not reasonably accommodate Plaintiff when she returned to her Molder position on August 24, 2015.

Order
317-11-17 Bncv Gates vs. Mack Molding Co., Inc.

Page **2** of **9**

Defendants were under no obligation to initiate the interactive process, and Plaintiff's failure to affirmatively request an accommodation is a sound basis for dismissal of his claim.").

The appropriate inquiry is whether Plaintiff can demonstrate that she requested an accommodation, or that she had an accommodation requirement that was "apparent" to Defendant such that it would exempt her from the accommodation request requirement.

The undisputed facts demonstrate that Plaintiff did not request accommodations when she returned to her Molder position on August 24, 2015 and handed her work release note to Patty Plesko. See Def. SUF ¶ 13 ("Plaintiff gave this doctor's instruction to Patty Plesko, Manager of Human Resources at the time, but did not say anything to her or make any specific request.") (Citing Ex. A at 106).[3] Plaintiff's act of handing over the instruction, coupled with her silence, does not demonstrate an apparent need for an accommodation. *Brady*, 531 F.3d at 135.

Therefore, the decision granting summary judgment for Defendant was proper unless Plaintiff had a need for accommodation that was apparent to Defendant notwithstanding the absence of an accommodation request. *Costabile*, 951 F.3d at 82–83. If Plaintiff had such a need, and if such a need were apparent, then Defendant may have had an obligation to accommodate Plaintiff based on that apparent need alone.

A comparison of Plaintiff's work restrictions set out in Dr. Gammon's note with the essential functions of the Molder position shows that Plaintiff had no apparent need for accommodation. Comparing the conditions set out in Dr. Gammon's work release with the list of physical demands necessary to perform the essential functions of the Molder position shows that Plaintiff was capable of performing all of the essential functions of the Molder position at the time she returned to work on August 24, 2015.[4] No reasonable jury could consider Plaintiff's wordless delivery of the note to Patty Plesko and conclude that Plaintiff had an apparent need for accommodation. Nor could any reasonable jury conclude that Plaintiff had a need for an accommodation that would have been apparent to Defendant solely by construing the limitations in Dr. Gammon's note against the physical demands required to fulfill the essential functions of the Molder position.

---

[3] Plaintiff disputed Def. SUF ¶ 13, but the citations to the record at Pl. SMFD ¶ 13 do not create a genuine dispute of material fact regarding whether Plaintiff requested an accommodation. See Pl. SMFD ¶ 13 ("Disputed. Angie testified that she requested reasonable accommodations from Mack when she returned to work in August 2015 by giving Patty a note from her doctor with her work restrictions on it, and that neither she nor Patty said anything. Angie Dep. Vol. 1, 5/15/2018, Ex. 4 at 106:4-15; 108:19-22.").

[4] Compare Def. SUF ¶ 20 (Dr. Gammon work release "stated that Plaintiff could sit, stand, and walk for 10 hours a day; that she could also continuously lift, carry ,and push/pull up to 20 pounds and frequently lift, carry, and push/pull up to 50 pounds; and that she was able to bend, stoop, twist, squat, kneel, crouch, climb stairs, climb ladders, and reach at , below, and above shoulder level continuously.") (citing Def. Ex. J; Def. Ex. A at 107) *with* Def. SUF ¶ 3 (The job description for Molder states as an essential function of the job, "Meets minimum physical/mental demands with or without reasonable accommodation." The Physical Demands include: Lifting: 0-25 lbs regularly; 26-40 lbs occasionally, Standing: Frequent to constant, Walking: Occasional to frequent, Bending: Frequent, Squatting: Frequent, Twisting: Frequent, Climbing: Occasional to frequent, Grasping: Frequent to constant gross, firm and fine manipulation, Shoulders: Frequent, Arms: Frequent; occasional to frequent reaching and pulling, Vibration: Occasional to frequent, Noise: Occasional to constant, Respiratory: Frequent to constant exposure to dust and fumes, Vision: Close vision, depth perception, and ability to adjust focus. (See Mack Northern Division Job Description Molder Position, Gates Tr. I Exhibit 19, attached hereto as "Ex. D", Ex. A, p. 236).

[4] Def. Ex. J; Def. Ex. A at 107.

Plaintiff argues that the list of physical demands required to perform the Molder position was incomplete because upon her return to work, she was put on the Press 30 machine—a job that Plaintiff argues required her to lift more weight than both what was authorized under Dr. Gammon's work release note and what was set out in the Molder position physical demands list. Plaintiff thus argues that she should have been accommodated because she was assigned to a job that had her lift in excess of the weight limitations specified on the job restrictions.

Plaintiff characterizes the operation of the Press 30 machine as requiring an ability to lift 33–35 pounds continuously. Because Dr. Gammon's work restrictions only enabled her to lift 21–50 pounds "frequently," Plaintiff argued that the Dr. Gammon's work restrictions did not permit her to operate the Press 30 machine. The undisputed facts are contrary to Plaintiff's characterization.

Plaintiff cites exhibits which demonstrate that operating the Press 30 machine required an employee to lift between 33 and 35 pounds every four and a half minutes during an eight-hour shift. See Pl. Motion at 7; Pl. Ex. 35 at ¶¶ 39–48.[5] The definition of "continuously" is "marked by uninterrupted extension in space, time, or sequence."[6] The definition of frequently is "at frequent or short intervals."[7] The definition of "frequent" is "happening at short inverses; often repeated or occurring."[8] A 4.5 minute interval between each lift on the Press 30 means that Plaintiff, at most, would lift 33–35 pounds frequently when assigned to that job. Construed in the light most favorable to Plaintiff, the affidavit Plaintiff cites at Pl. Ex. 35 will not permit a reasonable jury to conclude that the Press 30 required an employee to lift 33–35 pounds continuously. At most, the 4.5-minute-interval meant that the Press 30 job required Plaintiff to lift 33–35 pounds frequently.

A requirement to lift 33–35 pounds "frequently" is consistent with the restrictions set out in Dr. Gammon's work release note. A reasonable jury could not find that Plaintiff's act of handing Dr. Gammon's note to Patty Plesko upon her August 24, 2015 return from work demonstrated that Plaintiff had an apparent need for accommodation.

Having neither shown she requested accommodation nor demonstrated an apparent need for accommodation, Plaintiff cannot establish that Defendant had any obligation to accommodate her when she returned to work on August 24, 2015. As Defendant had no obligation to accommodate, a reasonable jury could not find that Defendant failed to accommodate Plaintiff when she returned from work on August 24, 2015.

The decision granting summary judgment for Defendant was not improper with respect to the August 24, 2015 disability discrimination allegation.

---

[5] Plaintiff's arguments suggest the conclusion that Plaintiff would have had an apparent need for an accommodation because Defendant "does not deny that Press 30 required [Plaintiff] to lift weigh [sic] 33-35 pounds continuously," and that Defendant does not deny that the operating requirements of the Press 30 machine "exceeded the weight/frequently listed in **both** Dr. Gammon's note and Mack's molder job description." Pl. Motion at 7; Pl. Ex. 35 at 5.

[6] CONTINOUS, Merriam-Webster, available at https://www.merriam-webster.com/dictionary/continuous (last accessed June 18, 2021).

[7] FREQUENTLY, Merriam-Webster. available at https://www.merriam-webster.com/dictionary/frequently (last access June 18, 2021).

[8] FREQUENT, Merriam-Webster. available at https://www.merriam-webster.com/dictionary/frequent (last access June 18, 2021).

**May 2016 disability discrimination allegation**

Plaintiff contends that the Court should reconsider its summary judgment decision because the decision "did not evaluate Angie's ability to perform the essential functions of the finishing job she sought and Mack's obligation to provide light duty even employees with non-work related injuries." Pl. Motion at 1.

In contrast with the preceding August 24, 2015 allegation, it is undisputed that Plaintiff requested an accommodation in May 2016.[9]  In essence, Plaintiff's argument for reconsidering the summary judgment decision is that Plaintiff can show that she was a qualified individual with a disability because a reasonable jury could find that Defendant was capable of accommodating Plaintiff by reassigning her to an existing, vacant position for which she was qualified.[10]  Plaintiff argues that the "light-duty" described in Defendant's employee handbook demonstrates the existence of such an existing, vacant position.  Thus, the material issue here is whether Plaintiff sought reasonable accommodation in the form of reassignment to an existing, vacant position for which she was qualified when she requested accommodation in May of 2016.

The April 5, 2021 summary judgment decision held that the light duty position Plaintiff identified was not a reasonable accommodation because it did not enable Plaintiff to continue fulfilling the essential functions of the Finisher position.  Plaintiff's motion for reconsideration clarifies that Plaintiff requested light duty not as a reasonable accommodation for the pre-disability finisher position, but rather as a reasonable accommodation by way of reassignment to an existing, vacant position for which Plaintiff is qualified.  Plaintiff's clarification of the issue is appreciated, and this decision will address and resolve that issue below.

As a threshold matter, it is not clear whether reassignment to an existing, vacant position constitutes a reasonable accommodation under the Vermont Fair Employment Practices Act ("VFEPA").  The VFEPA does not expressly list reassignment amongst its enumerated examples of reasonable accommodations in the applicable definition section at 21 V.S.A. § 495d(12)(B).  By contrast, the federal equivalent definition of reasonable accommodation at 42 U.S.C. § 12111(9) does include "reassignment to a vacant position" among the enumerated examples of reasonable accommodation.  Consider the following comparison:

---

[9] Any vacant position an employee identifies for reassignment as a form of accommodation must be a position for which that employee is qualified.  See, e.g., *Norville v. Staten Island University Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999) ("According to the EEOC guidelines, an employer who utilizes reassignment to meet the duty of reasonable accommodation for a current employee should reassign the individual to an equivalent position in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time.") (internal quotations omitted).  This third inquiry is not material, however.  As Plaintiff has not demonstrated that Defendant had an existing, vacant position to which it could assign Plaintiff as a reasonable accommodation, there is no position for which to consider Plaintiff's qualifications.

[10] Any vacant position an employee identifies for reassignment as a form of accommodation must be a position for which that employee is qualified.  See, e.g., *Norville v. Staten Island University Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999) ("According to the EEOC guidelines, an employer who utilizes reassignment to meet the duty of reasonable accommodation for a current employee should reassign the individual to an equivalent position in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time.") (internal quotations omitted).  This third inquiry is not material, however.  As Plaintiff has not demonstrated that Defendant had an existing, vacant position to which it could assign Plaintiff as a reasonable accommodation, there is no position for which to consider Plaintiff's qualifications.

(A) "Reasonable accommodation" means the changes and modifications that can be made in the structure of a job or in the manner in which a job is performed unless it would impose an undue hardship on the employer.

(B) "Reasonable accommodation" may include:
    (i) making the facilities used by the employees, including common areas used by all employees such as hallways, restrooms, cafeterias, and lounges, readily accessible to and usable by individuals with disabilities; and
    (ii) job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, and other similar actions.

21 V.S.A. § 495d(12). Reassignment would fall under the "and other similar actions" language of 21 V.S.A. § 495d(12)(B), if anywhere. Compare the Vermont statute with the analogous federal definition, defining "reasonable accommodation to include:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9) (emphasis supplied). This is not the first instance in which a Vermont trial court has encountered the question of whether reassignment is a reasonable accommodation under the VFEPA.[11] This decision need not resolve this question however, because the question of whether the VFEPA recognizes reassignment as a reasonable accommodation is only material to the disability discrimination claim if Defendant had such an existing, vacant position. As the following discussion will show, the undisputed facts show that Defendant had no such position.

Assuming that reassignment is a reasonable accommodation under the VFEPA, a Plaintiff requesting a reassignment accommodation must demonstrate that there is an existing, vacant position. See *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97–98 (2d Cir. 2009) ("An ADA plaintiff does not satisfy her burden to identify a potential accommodation merely by reciting the formula that her

---

[11] At least one other Vermont trial court has addressed the uncertain question of whether reassignment is a reasonable accommodation under the VFEPA. The trial court in that decision similarly compared the VFEPA definition of reasonable accommodation with the federal equivalent, writing:

"It is not clear to the Court that, under FEPA, the transfer to a wholly different position with the employer is properly characterized as a reasonable accommodation for an employee who is unable, with accommodations, to perform the essential functions of the job he is in, especially where the employee never sought such a transfer. There is some federal authority that requires a transfer to an alternative, vacant position as an accommodation when the employee has sought the move and the employer's policies permit it. *See* 42 U.S.C.A. § 12111(9) (expressly defining "reasonable accommodation" to include "reassignment to a vacant position"). FEPA's definition of "reasonable accommodation" includes no such demand, 21 V.S.A. § 495d(12), and the Vermont Supreme Court has cited *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 289 n.19 (1987), for the proposition that an "employer [is] not required to find another job for [an] employee who is not qualified for job she was doing." *G.S. Blodgett Co.*, 163 Vt. at 183."

*Wood v. City of Barre*, 2016 WL 8078133, at 7 n.4 (Vt. Super. Ct. Feb. 9, 2016) (Tomasi, J.). In both the instant case and the above-cited trial court decision, the issue of whether reassignment was a reasonable accommodation under the VFEPA was not a decisive issue. In this case, determining whether reassignment to an existing, vacant position is a reasonable accommodation under the VFEPA is not necessary because the undisputed facts are insufficient to permit a reasonable jury to conclude that Defendant in fact had such an existing, vacant position.

employer could have reassigned her. Instead, she must demonstrate the existence, at or around the time when accommodation was sought, of an existing vacant position to which she could have been reassigned") (citing *Jackan v. New York State Dept. of Labor¸* 205 F.3d 562, 566–67 (2d Cir. 2000)). *See also Shannon v. N.Y. City Transit Auth.,* 332 F.3d 95, 104 (2d Cir.2003) ("[T]he position sought must be vacant within a reasonable amount of time." (citing 29 C.F.R. pt. 1630, app. o)); *Norville,* 196 F.3d at 99 ("According to the EEOC guidelines, an employer who utilizes reassignment to meet the duty of reasonable accommodation for a current employee should reassign the individual to an equivalent position in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time.").

A position is "vacant," for purposes of this reassignment accommodation analysis, when a "similarly situated, nondisabled employee would be able to apply for that position." *Duvall v. Georgia-Pacific Consumer Prods.*, 607 F.3d 1255, 1263 (10th Cir. 2010). The existing position need not be vacant at the precise time of the request if the employer reasonably anticipates that it will become vacant in a short period of time. *Faidley v. United Parcel Service of America, Inc.*, 889 F.3d 933, 943 (8th Cir. 2018). The employee has the ultimate burden at summary judgment of proving that there was an existing, vacant position that was either available at the time of their request or that would become available shortly thereafter. *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017). To survive summary judgment, therefore, Plaintiff must present admissible evidence sufficient to create a genuine dispute as to whether Defendant had any existing positions that would have been vacant when Plaintiff requested accommodation in May 2016, or that would have become vacant shortly thereafter.

Plaintiff contends that there was an existing, vacant position to which she could have been reassigned based on Kevin Peets deposition and memorandum and the Defendant's workers' compensation transitional duty assignments policy.

<u>Kevin Peets deposition and memorandum</u>

Plaintiff argues that there was an existing, vacant position to which she could have been reassigned. Plaintiff characterizes two exhibits in the record as demonstrating that a light-duty position existed: the Kevin Peets deposition testimony, Pl. Ex. 33, and the Kevin Peets memorandum, Pl. Ex. 14.

Plaintiff wrote that Kevin Peets "testified at his deposition that there were many things an employee could do in a light duty job, such as trimming rings, which occurred on almost every shift." Plaintiff Reply at 12. Plaintiff's characterization of this deposition testimony is inconsistent with the deposition transcript. Plaintiff's characterization implies the availability of a separate light-duty position. However, the deposition testimony did not concern a particular job, but rather particular tasks that might be performed by an employee who "had light duty in the molding or finishing departments." Pl. Ex. 33, 36:11–13. The unabridged deposition testimony clarifies that Kevin Peets was describing light-duty work that Defendant would assign to employees at its discretion. The testimony does not demonstrate that "light-duty work" was an existing, vacant position to which non-disabled employees could apply, however. See Pl. Ex. 33 at 36:11–39:2. A reassignment accommodation requires that there be an existing, vacant position of employment—not an existing, vacant task or duty. Therefore, the Kevin Peets deposition transcript does not identify an existing, vacant position to which Plaintiff could seek reassignment as a reasonable accommodation.

The Kevin Peets memorandum likewise does not demonstrate that Defendant had an existing, vacant position to which it could have reassigned Plaintiff as a reasonable accommodation.[12] Plaintiff describes an accommodation request which appears more similar to an accommodation for a pre-disability position than an accommodation by reassignment to an existing, vacant position. While the Court's obligation to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Johnson v. Killian,* 680 F.3d 234, 236 (2d Cir. 2012), this obligation only extends to reasonable inferences. Plaintiff's proffered inference is unreasonable.

The Kevin Peets memorandum excerpts Plaintiff cites does not demonstrate that Plaintiff requested and was subsequently denied accommodation by reassignment an existing, vacant light-duty position. Plaintiff may be afforded a reasonable inference that she requested a light-duty, but that light-duty is not a reasonable accommodation because it does fulfill the essential functions of the finisher role. Defendant had the discretion to provide light-duty, but that light-duty work is not synonymous with a reasonable accommodation that Plaintiff alleges Defendant to have denied her.

<u>Light duty policy</u>

Plaintiff next argues that Defendant's light-duty policy evidences an existing, vacant position to which Defendant was required to reassign her. The Court addressed this precise argument in the April 5, 2021 summary judgment decision. As that decision explained,

> The policy Plaintiff appears to reference provides that Defendant "may provide, when available transitional duty assignments (i.e. light duty) for employees who receiving worker's compensation benefits and who are able to work, but not able to perform the essential functions of their position." Pl. Sur-Reply at 18 (citing Pl. Ex. 38 at 10-2). However, as Plaintiff was not receiving worker's compensation benefits at that time she alleged Defendant denied her light duty, Plaintiff has not demonstrated that any alleged denial of light duty was even a deviation of policy—not to say a deviation of policy that a trier of fact could find demonstrates pretext.

*Gates v. Mack Molding Co., Inc.*, No. 317-11-17 Bncv, at *14 (Vt. Super. Ct. Apr. 5, 2021) (Valente, J.). Setting aside the distinction between an existing, vacant position and the "transitional duty assignments (i.e. light duty)" discussed in the handbook, Plaintiff did not present admissible evidence sufficient to permit a jury to conclude that she was receiving worker's compensation benefits at the time she alleged Plaintiff denied her light duty. Plaintiff has not demonstrated that Defendant had an obligation, or even a discretionary option, to assign Plaintiff to "transitional duty assignment (i.e. light duty)" in accordance with the employee handbook.

Finally, Plaintiff raises the alternative argument that "Defendant's light duty positions were vacant positions to which it was required to assign her," notwithstanding her ineligibility for transitional duty assignments under the respective provisions of Defendant's employee handbook. Plaintiff's restatement of the law, while accurate, does not impact the summary judgment determination. Plaintiff

---

[12] Plaintiff writes that "On the day of Angie's request for light duty, May 6, 2016, Kevin wrote in a memo that he denied Angie's request for light duty as an accommodation because – he concluded – that she had not been injured at work. Ex. 15 to *Plaintiff's Memorandum in Opposition to Motion for Summary Judgment*, Kevin Peets Memo, dated 5/6/16.[12] His conclusion that she was not injured at work is simply wrong on its face. *Moreover, it is reasonable to infer that he did not have any existing vacant light duty jobs available then as, if he did, he would have denied her request on that basis*. Angie, as the non-moving party, is entitled to all reasonable inferences." Plaintiff Reply, at 14 (emphasis supplied).

again conflates an "existing, vacant position" with light-duty assignments or functions contemplated under the employee handbook's transitional duty assignments provision.

The decisions Plaintiff cites on pages 17–18 of her reply concern reassignment to existing, vacant positions. For example, the Plaintiff in *Barnett* "injured his back while working in a cargo-handling at petitioner US Airways, Inc" and. invoking seniority rights (an issue not material here), "transferred to a less physically demanding mailroom position." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 394 (2002).[13] The Defendant's discretion to assign employees "transitional duty assignments (i.e. light-duty)" is not tantamount to an existing, vacant position to which non-disabled employees could apply—such as the mailroom position in *Barnett*. The former is an accommodation for a pre-disability position; the latter, an accommodation by reassignment to a distinct and separate existing, vacant position for which that employee is qualified.

Plaintiff has not presented admissible evidence to demonstrate the existence of an existing, vacant position for which Plaintiff could seek reassignment. The employee handbook's "transitional duty assignments (i.e. light-duty)" provision Plaintiff points to does not meet the criteria of an existing, vacant position for purposes of this reasonable accommodation analysis. Assuming that the VFEPA definition of "reasonable accommodation" contemplates the sort of reassignment Plaintiff requests, summary judgment is still proper because Plaintiff has not demonstrated that Defendant had an existing, vacant position to which it could have reassigned Plaintiff.

A reasonable jury could not find that the "transitional duty assignments (i.e. light-duty)" provision in the employee handbook to establish an existing, vacant position. Summary judgment was therefore proper with respect to Plaintiff's May 2016 disability discrimination allegation.

## Order

Plaintiff's motion for reconsideration of the Court's decision granting Defendant's motion for summary judgment is **DENIED**.

John W. Valente
Superior Court Judge

---

[13] The mailroom job at issue in *Barnett* was an existing, vacant position that, "[u]der US Airways' seniority system, that position, like others, periodically became open to seniority-based employee bidding. In 1992, Barnett learned that at least two employees senior to him intended to bid for the mailroom job. He asked US Airways to accommodate his disability-imposed limitations by making an exception that would allow him to remain in the mailroom. After permitting Barnett to continue his mailroom work for five months while it considered the matter, US Airways eventually decided not to make an exception. And Barnett lost his job." *Barnett*, 535 U.S. at 394.

317-11-17 Bncv Gates vs. Mack Molding Co., Inc.